FILED

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION    11 JUL 25 PM 2: 58

STEPHEN R. LUDWIG CLERK
U.S. DISTRICT COURT
FOR THE NORTHERN DISTRICT
OF INDIANA

| | | |
|---|---|---|
| NEXSTAR BROADCASTING, INC., | ) | |
| | ) | |
| Plaintiff, | ) | **1: 11C V 249  RLM** |
| | ) | |
| vs. | ) | Case No. _____ |
| | ) | |
| GRANITE BROADCASTING | ) | |
| CORPORATION, WISE-TV LICENSE | ) | |
| LLC, and WISE-TV, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff Nexstar Broadcasting, Inc. ("Nexstar"), by counsel, for its Complaint against Defendants Granite Broadcasting Corporation, WISE-TV License LLC and WISE-TV, Inc., alleges and states as follows:

## INTRODUCTION

1.     Broadcast television is a vital conduit for businesses who wish to advertise to local audiences.  To reach most potential customers in a local market through broadcast television, advertisers purchase spots from television stations that supply viewers "must have" network programming, including but not limited to, prime-time entertainment programming such as *CSI*, *Glee, American Idol* or *The Office* or sports programming such as the Super Bowl or the NCAA men's basketball tournament.  To access this "must have" programming, local television stations execute affiliation agreements with one of the "Big Four" major U.S. television broadcast networks (FOX, NBC, ABC and CBS), or with the CW Network or MyNetworkTV, to be the exclusive in-market network affiliate.

198548.1

2.    The prices for advertising spots offered by television broadcasters are a function of the amount of competition present in the local television broadcast market.  Should such a market be dominated by an entity with economic power, it can be expected that prices for spot advertising will increase and foreclosure of competition will occur.

3.    This case concerns attempts by Defendant Granite Broadcasting Corporation and its subsidiaries, WISE-TV License, LLC and WISE-TV, Inc. (collectively referred to as "Granite") to monopolize the market for television broadcast local spot advertising sales in the Fort Wayne, Indiana Designated Market Area ("DMA").

4.    Granite already (1) owns and controls WISE-TV, the exclusive NBC network affiliate and MyNetworkTV affiliate in the Fort Wayne DMA and (2) controls the advertising sales and revenues of WPTA-TV, the exclusive ABC network affiliate and the CW affiliate in the Fort Wayne DMA, via an advertising representation agreement with Granite's partner, Malara Broadcasting ("Malara").  As of August 1, 2011, Granite will also be the exclusive FOX affiliate in the Fort Wayne DMA and will broadcast the FOX network via digital multicast transmission on WISE-DT.

5.    As a result of locking up the exclusive rights to three of the "Big Four" television broadcast network affiliations, the CW network affiliate and the MyNetworkTV affiliate, Granite has obtained and will have the ability to exercise substantial market power in the Fort Wayne DMA.  Granite has achieved the power to raise the price of vital local television advertising in the Fort Wayne DMA to the detriment of businesses in the Fort Wayne DMA that advertise to consumers.  By causing advertising rates to be increased above competitive levels, Granite, in turn, has caused and will continue to cause the prices of goods and services sold by advertisers to consumers in the Fort Wayne DMA to be increased as well.

198548.1

6.     Moreover, as a result of the substantial market power that Granite wields and will continue to wield, it will have the opportunity and ability to engage in further anticompetitive acts. It will be able to demand exclusive arrangements from advertisers, thereby further foreclosing television station competition in Fort Wayne. It will also be able to deny valuable programming inputs to other Fort Wayne television stations by paying supra-competitive rates or other inflated consideration for key inputs – rates that it will be able to subsidize through the charging of supra-competitive prices to advertisers. Granite has already used this ability to recoup supra-competitive amounts to obtain the FOX network affiliation in Fort Wayne.

7.     There is no offsetting efficiency rationale or procompetitive benefit that justifies Granite's anticompetitive acts.

8.     As a result of Granite's actions, Nexstar has incurred and will incur substantial harm. Granite's illegal acts have denied Nexstar and other television station owners the ability to access major network affiliations. By precluding Nexstar from accessing this "must have" network programming, Granite has caused and will cause Nexstar to lose substantial profits and has made it substantially more costly for Nexstar to produce important, substantial and diverse programming, such as competitive news broadcasts. Moreover, Granite has virtually precluded Nexstar from accessing certain viewer constituents, such as professional sports viewers, on a wholesale basis. And Granite has made Nexstar susceptible to other anticompetitive tactics that it has employed and/or will employ, such as its attempts to predate upon WFFT-TV employees that possess confidential and proprietary information.

9.     Granite's actions violate law. They amount to (1) an agreement to unreasonably restrain trade under Section 1 of the Sherman Act both under Rule of Reason and *per se* analysis; (2) an attempt to monopolize and conspiracy to monopolize under Section 2 of the Sherman Act;

(3) transactions that will likely substantially lessen competition under Section 7 of the Clayton Act; and (4) violations of Indiana antitrust law.

10.     Nexstar brings this suit to enjoin Granite from obtaining or holding advertising and revenue control of three of the "Big Four" (and five of the six) national network affiliations in the Fort Wayne television market and from continuing to engage in anticompetitive acts.  It also brings this suit to recover treble damages for the harm that Nexstar has already suffered and will continue to suffer from Granite's actions.

**JURISDICTION AND VENUE**

11.     This Complaint is filed under Section 16 of the Clayton Act, 15 U.S.C. § 26, to prevent and restrain violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. § 1, and of Section 7 of the Clayton Act, 15 U.S.C. § 18; under Indiana Code §§ 24-1-2-1, -2; and for damages under Section 4 of the Clayton Act, 15 U.S.C. § 15, and Indiana Code §24-1-2-7.  This Court has jurisdiction over the federal antitrust law claims alleged herein under 15 U.S.C. § 15 and 28 U.S.C. §§ 1331, 1337.

12.     Granite transacts business in and is found in this District.  The interstate trade and commerce involved and affected by the alleged violations of antitrust law was and is caused in part within this District.  The acts complained of have had, and will have, substantial anticompetitive effects in this District.  Venue is proper in this District under 28 U.S.C. § 1391 and 15 U.S.C. §§ 15, 22.

13.     This Court has supplemental jurisdiction over the Indiana state law claim alleged herein under 28 U.S.C. § 1367 because the same facts alleged herein support both federal and Indiana antitrust law claims.

198548.1

14.    A substantial amount of interstate trade and commerce involved in this case and affected by the alleged violations of antitrust law occurs within this District.

15.    The signals of television stations broadcasting from Fort Wayne are viewable in, at least, the states of Indiana, Ohio, and Michigan.  The Fort Wayne DMA includes counties in both Indiana and Ohio.  Advertisers purchase advertising from Fort Wayne television stations in interstate commerce.  The products advertised on Fort Wayne television stations also move in interstate commerce.

## THE PARTIES

### A.    Plaintiff Nexstar

16.    Plaintiff Nexstar is a corporation organized and existing under the laws of Delaware with its principal place of business in Irving, Texas.  Nexstar owns and operates local broadcast television stations in United States, including in Fort Wayne, Indiana where it owns and operates WFFT-TV.  WFFT has been the FOX network affiliate in Fort Wayne since the network's launch in October 1986.  On August 1, 2011 at 12:01 a.m., WFFT-TV's network affiliation agreement with the FOX Broadcasting Company for the Fort Wayne DMA will terminate.

### B.    Defendants

17.    Defendant Granite Broadcasting Corporation ("GBC") is a corporation organized and existing under the laws of Delaware with its principal place of business in New York, New York.  GBC owns and/or operates broadcast television stations in the Midwest, New York, and California through subsidiaries and affiliates, and describes itself as "a market leading owner of local media properties."

198548.1

18.     Defendant WISE-TV, Inc. is a corporation organized and existing under the laws of Delaware with its principal place of business in Fort Wayne, Indiana.  WISE-TV, Inc. is a wholly-owned subsidiary of GBC and is the entity that manages Granite's Fort Wayne television operations.

19.     On information and belief, WISE-TV, Inc. holds the exclusive NBC network affiliation for the Fort Wayne DMA.  It also holds the exclusive network affiliation for MyNetworkTV programming which it broadcasts via digital broadcast multicast on WISE-DT. As of August 1, 2011, WISE-TV will also have the right to exclusively transmit FOX network programming in the Fort Wayne DMA via digital multicast on WISE-DT.

20.     In Fort Wayne, Granite, apparently through WISE-TV, Inc., also controls the advertising sales and revenues of WPTA-TV, an ABC affiliate, and WPTA-DT, a CW affiliate, through an "advertising representation agreement" with Malara.  The parties also have a services sharing arrangement through which, on information and belief, Granite exercises certain rights on behalf of Malara.

21.     Defendant WISE-TV License LLC is a limited liability company organized and existing under the laws of Delaware with its principal place of business in Fort Wayne, Indiana. WISE-TV License LLC is a wholly-owned subsidiary of WISE-TV, Inc.  It holds the Federal Communications Commission ("FCC") license that permits Granite's Fort Wayne television station to broadcast television signals under the call signs WISE-TV and WISE-DT.

## CO-CONSPIRATORS

22.     Upon information and belief, various persons, firms, corporations, organizations and other business entities have participated as co-conspirators in the violations alleged herein and have performed acts in furtherance of the conspiracies.  Some of these persons, firms,

6

198548.1

corporations, organizations and business entities are known, such as Malara, and some are unknown.

**FACTS COMMON TO ALL COUNTS**

**A.      Granite's Control of Television Broadcasting in Fort Wayne**

23.      There are only five commercial full-power television stations broadcasting digital channels and sub-channels in the Fort Wayne DMA.

24.      Granite purchased WPTA-TV, then and now an ABC affiliate, in 1989.

25.      In March 2005, Granite bought WISE-TV, the NBC affiliate serving Fort Wayne. WISE-TV currently broadcasts NBC and MyNetworkTV programming (via WISE-DT digital multicast) on an exclusive basis in the Fort Wayne DMA.

26.      Also in March 2005, in a transaction coordinated with the purchase of WISE-TV, Granite sold WPTA-TV to Malara, with Granite providing a guarantee to Malara's creditors for more than half of the purchase price.

27.      Notwithstanding the purported transfer of WPTA-TV's ownership to Malara, Granite continues to operate WPTA-TV (and WPTA-DT, the CW affiliate) as part of a "shared services agreement" between WPTA and WISE-TV.  Granite has referred to this relationship with Malara as "a strategic arrangement . . . under which [Granite] provide[s] advertising sales, promotion and administrative services, and selected programming . . . in return for certain fees that are paid by Malara Broadcast Group to [Granite]."

28.      Granite firmly controls and profits from the local advertising sales for Malara's WPTA-TV and WPTA-DT.  Indeed, in submissions to the U.S. Bankruptcy Court for the Southern District of New York in 2007, Granite included Malara and Malara's debt in the valuation of Granite's enterprise value and defined Malara as a Granite subsidiary.  Moreover,

7

Indiana's NewsCenter ("INC") – the brand name for Granite's consolidated operations in Fort Wayne – currently identifies Granite as "the present owner" of WPTA.

29.     As a result of its relationship with Malara, Granite controls sales and revenues for the NBC, ABC, CW and MyNetworkTV affiliates in Fort Wayne.  Granite has touted in court filings that it has a "dominant position . . . through [its] Malara relationship" in the Fort Wayne DMA.  It made this representation even before its recent entrance into the FOX network affiliation agreement for the Fort Wayne DMA.

**B.      The Granite/FOX Affiliation Agreement**

30.     On June 20, 2011, Granite and the FOX Broadcasting Company announced they had reached a new exclusive network affiliation agreement effective August 1, 2011.

31.     As noted in the news media following the announcement, "[t]he new affiliation gives Indiana's NewsCenter [*i.e.*, Granite] access to national programming offered by three of the four major TV networks: ABC (WPTA-TV/21.1); NBC (WISE-TV/31.1); and FOX."

**C.      Granite's Efforts to Hire Away Nexstar's Employees**

32.     Immediately after the public announcement of its new FOX affiliation agreement, Granite/Malara/INC approached Nexstar's advertising sales force to hire away key employees from Nexstar's WFFT-TV.  Nexstar understands that INC, through its General Sales Manager Dan Hoffman, attempted to lure several key sales employees away from Nexstar via lucrative compensation packages.  One former sales representative of WFFT-TV left to work for Granite after being offered, upon information and belief, an over 60% increase in base compensation.

33.     These key employees possess information of WFFT-TV that is confidential and proprietary, such as the prices at which WFFT-TV has sold spot advertisements.  This

198548.1

information thus is now in danger of being relayed to Granite without the consent of Nexstar or WFFT-TV.

**D.      Granite's Statements Regarding WFFT-TV**

34.     Even before its exclusive license to broadcast FOX programming becomes effective, Granite has attempted to accelerate the movement of advertisers from Nexstar's WFFT-TV to the stations owned by Granite and Malara by denigrating WFFT-TV to advertisers and the public.  Upon information and belief, Granite representatives have told advertisers that WFFT-TV, due to the fact that it will soon be unable to access "must have" network programming, will be going off the air, is about to be sold, or will no longer broadcast local news.  Such statements both acknowledge the hurdles that have been placed before WFFT-TV by Granite's anticompetitive tactics and demonstrate how WFFT-TV's goodwill has been substantially damaged by its inability to access network programming.

## RELEVANT MARKETS

**A.      Product Market**

35.     The relevant product market is broadcast television local spot advertising.

36.      Broadcast television stations attract viewers through their programming and then sell access to their viewers to businesses and others that want to advertise their products and services.  Broadcast television programming is transmitted by broadcast television stations, for free, over the air to television receivers.

37.     Sales of spot advertising generate the majority of a commercial broadcast television station's revenues.  Broadcast television spot advertising is purchased by advertisers that want to target potential customers in specific, localized geographic markets.

198548.1

38.     Broadcast television spot advertising possesses attributes that collectively set it apart from advertising using other types of media.  Television combines sight, sound, and motion, thereby creating a memorable and effective advertisement.  Moreover, of all media, broadcast television spot advertising reaches the largest percentage of all potential customers in a particular desired target audience and is therefore especially effective in introducing and establishing the image of a product.

39.     A substantial number of advertisers view broadcast television spot advertising as a necessary advertising medium for which there is no close substitute.  Such advertisers would not switch to another advertising medium – such as radio, cable, internet, or newspaper – or some combination thereof, if broadcast television spot advertising prices increased by a small. but significant, non-transitory amount.

**B.    Geographic Market**

40.     The relevant geographic market for this case is the Fort Wayne DMA.  A DMA is a geographic area defined by Nielsen Media Research, a firm that surveys television viewers and furnishes television stations, advertisers, and advertising agencies with data to aid in evaluating audience size and composition.  The Fort Wayne DMA encompasses the city of Fort Wayne, Indiana, and surrounding counties in Indiana and Ohio in which stations within the Fort Wayne DMA receive the largest share of viewers.

41.     Advertisers use broadcast television stations within the Fort Wayne DMA to reach the largest possible number of viewers within the entire DMA.  Advertising on television stations outside the Fort Wayne DMA is not an effective alternative for these advertisers because such stations are not viewed by a significant number of potential customers within the Fort Wayne DMA.

198548.1

42.     Thus, if there were a small, but significant, non-transitory price increase in broadcast television spot advertising prices within the Fort Wayne DMA, an insufficient number of advertisers would switch their advertising time purchases to television stations outside the DMA to render the price increase unprofitable.

## MARKET POWER

43.     Granite, on its own and through Malara and INC, currently controls approximately 45% of all broadcast television advertising revenues in the Fort Wayne DMA. Through its ownership and control of the FOX network affiliation, in addition to the NBC, ABC, CW and MyNetworkTV network affiliations, Granite will control a substantially larger share of these advertising revenues in the Fort Wayne DMA.  These shares evidence that Granite will command market power over broadcast television advertising sales in the Fort Wayne DMA.

44.     Granite's market power is also demonstrated by its ability to foreclose competition through its contracts for five of the six exclusive national network affiliations in the Fort Wayne DMA.  And it is demonstrated by its ability to charge, with respect to the Fort Wayne DMA, supra-competitive prices for local spot advertising.

45.     Granite has admitted that it possesses market power in the Fort Wayne DMA by stating, in court filings, that it has a "dominant position" there.

## HARM TO COMPETITION

46.     Granite's actions have harmed and will continue to harm competition and consumers in the market for broadcast television local spot advertising.  Among other things, advertisers have paid and will continue to pay supra-competitive advertising rates for television broadcast spots in the Fort Wayne DMA as a result of Granite's actions.  This will cause, in turn, Indiana consumers to pay higher prices for goods and services that these advertisers sell.

11

198548.1

47.     Granite's exclusionary acts have foreclosed and will continue to foreclose television broadcast competition in the Fort Wayne DMA.  They have already caused competitors, including Nexstar's WFFT-TV, to be barred from continued access to "must have" television network programming.  Granite caused such foreclosure by giving FOX consideration for its exclusive affiliation agreements at an amount that is only economically rational for Granite because it has charged and will charge supracompetitive rates for spot advertising.

48.     Granite's foreclosure of television broadcast competitors from five of the six national networks will severely hamper the ability of such broadcasters, including Nexstar's WFFT-TV, to compete for local advertising revenues, as advertisers are reluctant to buy advertising from broadcasters who cannot reach the large audiences that major network programming attracts.  It will cripple the ability of Fort Wayne television broadcast competitors to sell advertising to certain companies that target particularized consumer audiences, as these competitors will be unable to reach these audiences without the benefit of network affiliation. For example, competitors unable to access network programming in the Fort Wayne DMA will be unable to broadcast major sporting events, nullifying their ability to offer advertising spots to entities seeking to target sports viewers.

49.     Granite's foreclosure of competitors, including Nexstar's WFFT-TV, has and will raise the costs of operation for these competitors, as these stations will be deprived of the revenue that would otherwise be provided to them through their accessing of network programming.  In particular, it will cause these competitors to incur costs that they would not incur in a competitive market to offer quality news and other local programming to viewers, including the cost of new equipment and licenses to broadcast new programs to replace the network programming from which they are barred.

198548.1

50.     Granite's predation upon the sales staffs of Fort Wayne television broadcast competitors, including those employed by WFFT-TV, by offering them compensation packages that are substantially above market rate will further harm competition. This is especially so inasmuch as (1) finding sales staff with an expertise in the television network industry is rare, as such expertise is generally gained after years of employee training; and (2) such employees generally have access to information that is proprietary, confidential and otherwise competitively-sensitive, such as the prices at which particular spots have been offered and sold by Granite's competitors. Granite's raids upon the sales staffs of WFFT-TV make it all the more likely that Granite will come into the possession of such confidential and proprietary information without the consent of WFFT-TV or Nexstar.

## CLAIMS FOR RELIEF

### COUNT I

### (Unreasonable Restraint of Trade)

51.     Nexstar realleges every allegation of this Complaint as if fully set forth herein.

52.     Granite, along with Malara,has entered into continuing illegal contracts, combinations, or conspiracies in restraint of trade, the purpose and effect of which are to eliminate competition in the market for providing broadcast television advertising in the Fort Wayne DMA. These contracts, combinations, or conspiracies are illegal under Section 1 of the Sherman Act, 15 U.S.C. § 1 whether analyzed under *per se* or Rule of Reason treatment. Among other things, Granite's (1) control over the exclusive NBC, ABC, CW and MyNetworkTV Fort Wayne network affiliations, (2) acquisition of the exclusive FOX affiliation in Fort Wayne, and (3) predatory hiring of Nexstar's Fort Wayne sales staff, constitute illegal contracts, combinations, or conspiracies.

198548.1

53.     Granite, in combination with Malara as "Indiana's NewsCenter," possesses and will continue to possess substantial market power as a result of their illegal acts.

54.     The resulting combination has caused and will lead to substantial anticompetitive harm in the form of likely price increases to advertisers and MVPDs and foreclosure of television broadcast competition in the Fort Wayne DMA.

55.     These contracts, combinations or conspiracies have no legitimate business purpose.  They achieve no legitimate efficiency benefit to counterbalance the anticompetitive effects that they cause.

56.     As a result of these violations of Section 1 of the Sherman Act, Nexstar has been injured in its business and property in an amount not presently known.

57.     As a result of these violations of Section 1 of the Sherman Act, Nexstar also faces irreparable injury.  Such violations and the effects thereof are continuing and will continue unless injunctive relief is granted.  Nexstar has no adequate remedy at law.

**COUNT II**

**(Attempt to Monopolize)**

58.     Nexstar realleges every allegation of this Complaint as if fully set forth herein.

59.     In violation of Section 2 of the Sherman Act, 15 U.S.C. §2, Granite has willfully, knowingly, and with specific intent to do so, attempted to monopolize the relevant market.

60.     This attempt to monopolize the relevant market has been effectuated by overt exclusionary acts, including the acquisition of the FOX affiliation agreement.

61.     There exists a dangerous probability that Granite will monopolize the relevant market as a result of these overt acts.  When Granite's exclusive FOX affiliation agreement for

198548.1

the Fort Wayne area becomes effective, it will maintain and enhance its dominant share of broadcast television advertising revenues in the relevant market.

62.     Granite's conduct in poaching and attempting to poach employees from WFFT-TV amounts to exclusionary conduct known as "predatory hiring."  Granite undertook this conduct for the purpose of denying Nexstar access to valuable talent, and to compromise WFFT-TV's role as a substantial competitor.  In addition to constituting overt exclusionary acts, this conduct illustrates Granite's specific intent to monopolize the relevant market.

63.     There is no legitimate business justification for or pro-competitive benefits caused by Granite's conduct.

64.     As a result of Granite's violations of Section 2, Nexstar has been substantially injured in its business and property.

65.     As a result of these violations of Section 2 of the Sherman Act, Nexstar also faces irreparable injury.  Such violations and the effects thereof are continuing and will continue unless injunctive relief is granted.  Nexstar has no adequate remedy at law.

### COUNT III

#### (Conspiracy to Monopolize)

66.     Nexstar realleges every allegation of this Complaint as if fully set forth herein.

67.     In violation of Section 2 of the Sherman Act, 15 U.S.C. §2, Granite and Malara have willfully, knowingly, and with specific intent to do so, combined or conspired to monopolize the relevant market.

68.     Granite's acquisition of the FOX affiliation, Granite's poaching and attempting to poach key employees from WFFT-TV, and Granite and Malara's other acts alleged herein constitute overt acts in furtherance of the conspiracy.

15

198548.1

69.     There is no legitimate business justification for or pro-competitive benefits caused by the conspiracy.

70.     As a result of the conspiracy, Nexstar has been substantially injured in its business and property.

71.     As a result of the conspiracy, Nexstar also faces irreparable injury.  Such violations and the effects thereof are continuing and will continue unless injunctive relief is granted.  Nexstar has no adequate remedy at law.

## COUNT IV

### (Violation of Section 7 of the Clayton Act)

72.     Nexstar realleges every allegation of this Complaint as if fully set forth herein.

73.     The exclusive license to broadcast programming from the FOX Network in the Fort Wayne area is a substantial asset.  Its acquisition by Granite, which already owns or controls exclusive licenses to broadcast programming from the NBC, ABC, CW and MyNetworkTV networks in the Fort Wayne area, will substantially lessen competition in the relevant market, and tend to create a monopoly, in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18.

74.     As a result of this transaction, Nexstar has been substantially injured in its business and property.

75.     If Granite is allowed to assume control of three of the Big Four, and five of all six national network affiliations in the Fort Wayne DMA, Nexstar will sustain irreparable injury. Nexstar has no adequate remedy at law.

## COUNT V

### (Violation of the Indiana Antitrust Act)

76.     Nexstar realleges every allegation of this Complaint as if fully set forth herein.

198548.1

77.     The conduct alleged in this complaint also constitutes a violation of Indiana Code §§ 24-1-2-1, 24-1-2-2.

78.     As a result of Granite's violations of the Indiana Antitrust Act, Nexstar has been substantially injured in its business and property.

## RELIEF SOUGHT

WHEREFORE, plaintiff respectfully requests the following relief:

A.     That the Court declare, adjudge and decree that Granite has committed the violations of federal and state law alleged herein;

B.     That Granite along with Malara, their directors, officers, employees, agents, successors, and assigns be enjoined and restrained from, in any manner, directly or indirectly, controlling television stations affiliated with three of the "Big Four" networks in the Fort Wayne DMA, namely ABC, CBS, FOX, and NBC;

C.     That Granite cease its efforts to obtain the employment of employees currently under the employ of Nexstar's WFFT-TV;

D.     That Granite delete or expunge any WFFT-TV proprietary and confidential information that it has been provided to date, including information relating to WFFT-TV actual prices and that Granite be enjoined and restrained from all attempts to discover such information in the future;

E     That Granite provide Nexstar with damages, in an amount to be proven at trial, to be trebled according to law, plus interest, including prejudgment interest, to compensate Nexstar for the damages it has incurred from Granite's violations of the antitrust laws; and

F.     That the Court award Nexstar attorneys' fees and costs of suit, and such other and further relief this Court may deem just and proper.

198548.1

## DEMAND FOR JURY TRIAL

Nexstar hereby demands a trial by jury as to all issues so triable.

DATED:  July 25, 2011

Respectfully submitted,

Libby Y. Goodknight, Attorney No. 20880-49B
KRIEG DeVAULT LLP
One Indiana Square, Suite 2800
Indianapolis, Indiana  46204-2079
(317) 636-4341
FAX:  (317) 636-1507
lgoodknight@kdlegal.com

Jeffrey C. McDermott, Attorney No. 11247-49
KRIEG DeVAULT LLP
12800 North Meridian Street, Suite 300
Carmel, Indiana  46032
(317) 566-1110
FAX:  (317) 636-1507
jmcdermott@kdlegal.com

Attorneys for Plaintiff Nexstar Broadcasting, Inc.

Of counsel:

Matthew L. Cantor
Lloyd Constantine
Ankur Kapoor
Samuel Rikkers
CONSTANTINE CANNON LLP
335 Madison Avenue, 9th Floor
New York, NY 10017
Telephone: (212) 350-2700
Facsimile: (212) 350-2701
mcantor@constantinecannon.com
lconstantine@constantinecannon.com
akapoor@constantinecannon.com
srikkers@constantinecannon.com

18

198548.1

Mitchell L. Stoltz
CONSTANTINE CANNON LLP
1301 K St NW, Ste. 1050 East
Washington, DC 20005
Telephone: (202) 204-3500
Facsimile: (202) 204-3501
mstoltz@constantinecannon.com

KD_3544964_1.DOC

198548.1