UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| NEXSTAR BROADCASTING, INC., | ) |
| *Plaintiff* | ) ) ) |
| vs. | ) CAUSE NO. 1:11-CV-249 RM ) |
| GRANITE BROADCASTING CORPORATION, WISE-TV LICENSE, LLC, AND WISE-TV, INC., | ) ) ) ) |
| *Defendants* | ) ) |

OPINION and ORDER

This antitrust suit focuses on the market in the Fort Wayne, Indiana, area for television local spot advertising supported by network programming. Until its affiliation expired at the end of last July, Nexstar Broadcasting, Inc. operated the FOX affiliate in Fort Wayne. Granite Broadcasting Corporation became the FOX affiliate, giving Granite and Malara Broadcasting (with which Granite is allegedly associated) five of the six network affiliations in the Fort Wayne area. Nexstar contends that by its anticompetitive conduct, Granite has foreclosed it from the market. Granite has moved to dismiss Nexstar's complaint for failure to state a claim. The court heard argument on June 14, and now denies Granite's motion.

The issue on a motion to dismiss under Federal Rule of Procedure 12(b)(6) isn't "whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." Caremark, Inc. v. Coram Healthcare Corp., 113 F.3d 645, 649 (7th Cir. 1997). The complaint must contain

a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Detailed factual allegations aren't required, but the complaint must contain enough factual matter "to 'state a claim that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); *see also* Morrison v. YTB Int'l, Inc., 649 F.3d 533, 538 (7th Cir. 2011); Brooks v. Ross, 578 F.3d 574, 581 (7th Cir. 2009). To plead a plausible claim, a complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678; *see also* Swanson v. Citibank, N.A., 614 F.3d 400, 404 (7th Cir. 2010) ("[T]he plaintiff must give enough details about the subject-matter of the case to present a story that holds together."). "Threadbare recital of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. at 678.

The complaint needn't specifically plead each element the pleader must prove at trial, *see* Reynolds v. CB Sports Bar, Inc., 623 F.3d 1143, 1147 (7th Cir. 2010); Bausch v. Stryker Corp., 630 F.3d 546, 560 (7th Cir. 2010), *cert. denied*, 132 S. Ct. 498 (Oct. 31, 2011), but it must contain enough factual allegations to make it more than a "sheer possibility" that the defendant has acted unlawfully. Ashcroft v. Iqbal, 556 U.S. at. 678; *accord*, In re Text Messaging Antitrust Litigation, 630 F.3d 622, 629 (7th Cir. 2010), *cert denied*, 131 S. Ct. 2165 (Apr. 25, 2011) ("[T]hat the allegations undergirding a claim could be true is no longer enough to save a complaint from being dismissed; the complaint must establish

a nonnegligible probability that the claim is valid; but the probability need not be as great as such terms as 'preponderance of the evidence' connote."). "The required level of factual specificity rises with the complexity of the case." McCauley v. City of Chicago, 671 F.3d 611, 616 (7th Cir. 2011); Swanson v. Citibank, N.A., 614 F.3d 400, 404 (7th Cir. 2010) ("A more complex case . . . will require more detail, both to give the opposing party notice of what the case is all about and to show how, in the plaintiff's mind at least, the dots should be connected."); Limestone Development Corp., 520 F.3d at 803 ("RICO cases, like antitrust cases, are 'big' cases and the defendant should not be put to the expense of big-case discovery on the basis of a threadbare claim.").

I.

Nexstar brings this suit against Granite and its subsidiaries, WISE-TV License, LLC and WISE-TV, Inc. (to whom the court collectively refers as "Granite"), alleging that Granite engaged in anti-competitive conduct with Malara Broadcasting and other unnamed co-conspirators that significantly limited or foreclosed competition in the television local spot advertising market in the Fort Wayne designated market area by restricting access to an essential element of competition–network programming, to the detriment of competitors (like Nexstar), local advertisers, and consumers, and that its actions constitute an unreasonable restraint of trade, an attempt to monopolize, and a conspiracy to monopolize in violation of §§ 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2 (Counts 1-3), §

3

7 of the Clayton Act, 15 U.S.C. § 18 (Count 4), and Indiana's Antitrust Act, IND. CODE §§ 24-1-2-1 and 24-1-2-2 (Count 5).

The court accepts (without vouching for their truth) the following factual allegations in the complaint as true for purposes of the motion to dismiss:

Nexstar owns and operates WFFT-TV, one of five commercial full-power television stations in Fort Wayne and the exclusive FOX network affiliate from October 1986 until Nexstar's agreement with FOX Broadcasting terminated on July 31, 2011.

Granite owns and controls WISE-TV, the exclusive NBC affiliate and MyNetworkTV affiliate in the Fort Wayne DMA, and controls the advertising sales and revenues of WPTA-TV, the exclusive ABC affiliate and the CW affiliate in the Fort Wayne designated market area, under an advertising representation agreement with Malara Broadcasting, which owns WPTA-TV.

Access to network programming is an essential element, or "key input," for competition in the television local spot advertising market in the Fort Wayne designated market area. As a result of its relationship with Malara, Granite controls access to network programming for ABC, NBC, CW and MyNetworkTV and about 45 percent of the broadcast television local spot advertising revenues in the Fort Wayne designated market area.

When Nexstar's agreement with FOX Broadcasting ended in 2011, Granite paid a supra-competitive price to become the new exclusive FOX affiliate in Fort Wayne (effective August 1, 2011), providing Granite with control over

4

programming and local advertising for five of the six major national network affiliations and three of the "Big Four" networks in the Fort Wayne DMA (ABC, NBC, FOX, CW, and MyNetwork TV), substantially increasing Granite's share of the television local spot advertising market, and significantly limiting or foreclosing competitors' access to network programming and their ability to compete for advertising revenues.

Since announcing its agreement with FOX in July 2011, Granite, Malara, and/or Indiana's NewsCenter (the brand name for Granite's consolidated operations in Fort Wayne) have used offers lucrative compensation packages to entice several key Nexstar sales employees who have confidential and proprietary information pertaining to Nexstar's advertising prices. Granite also has tried to speed the movement of advertisers from Nexstar's WFFT-TV to the stations Granite and Malara owns by telling advertisers that WFFT-TV won't have "must have" network programming. or will be going off the air, or is about to be sold, or will discontinue local news.

Granite's collusive aggregation of exclusive network affiliations, denigrating commercial speech, and predatory hiring is harming competition generally, and Nexstar specifically. The injuries include lost advertising revenues, higher operating costs (such as the cost of new equipment and licenses to broadcast new programs to replace the network programming from which Nexstar is foreclosed, and the cost of producing competitive news broadcasts), loss of experienced sales staff and their confidential and proprietary information. Local advertisers will have

to pay higher prices for advertising, so consumers will have to pay higher prices for what local advertisers sell.

Nexstar asks the court to: (1) enjoin Granite and Malara, their directors, officers, employees, agents, successors, and assigns from directly or indirectly controlling television stations affiliated with ABC, CBS, FOX, and NBC; (2) order Granite to cease efforts to employee individuals currently employed by Nexstar's WFFT-TV, to delete or expunge any WFFT-TV proprietary and confidential information provided, and to enjoin and restrain Granite from all attempts to discover such information in the future; and (3) award Nexstar actual and treble damages, interest, attorneys' fees, and costs.

In support of its dismissal motion, Granite contends that: (1) the complaint doesn't sufficiently allege antitrust injury; (2) Nexstar lacks standing to maintain a private antitrust action; (3) the allegations of denigrating commercial speech and predatory hiring don't state an actionable antitrust claim; and (4) Nexstar hasn't sufficiently alleged a conspiracy in Counts 1 and 3.

II.

A. *Antitrust Injury*

An antitrust claim has three elements: (1) conduct that violates the antitrust laws; (2) antitrust injury, and (3) measurable damages. In re Scrap Metal Antitrust Litig., 527 F.3d 517, 532 (6th Cir. 2008); Deich-Keibler v. Bank One, 243 Fed. Appx. 164, 168 (7th Cir. 2007); Deiter v. Microsoft Corp., 436 F.3d 461, 467 (4th

Cir. 2006); Blades v. Monsanto Co., 400 F.3d 562, 566 (8th Cir. 2005); In re Urethane Antitrust Litigation, 251 F.R.D. 629, 634 (D. Kan. 2008); City of Auburn v. Mavis, 468 N.E.2d 584, 585 (Ind. App. 1984). To satisfy the requirement of antitrust injury, Nexstar must show that it suffered an "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful," Brunswick Corp. V. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 489 (1977), meaning that it "suffered a loss that stems from a competition-reducing aspect of the defendant's behavior." In re Urethane Antitrust Litigation, 251 F.R.D. at 634.

Granite contends that Nexstar hasn't alleged antitrust injury because the only injuries alleged are higher consumer prices and the loss of its exclusive FOX affiliation contract (a change from one exclusive distributor to another), and the antitrust laws weren't intended to prevent either, citing, *e.g.*, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 582-583 (1986) ("Respondents cannot recover . . . for any conspiracy by petitioners to charge higher than competitive prices in the American market."); O.K. Sand & Gravel, Inc. v. Martin Marietta Techs., Inc., 36 F.3d 565, 572-573 (7th Cir. 1994) ("price increases could not be considered an antitrust injury to competitors"); Alberta Gas Chems. Ltd. v. E.I. DuPont de Nemours & Co., 826 F.2d 1235, 1242-1243 (3rd Cir 1987); Ralph C. Wilson Indus., Inc. v. Chronicle Broad. Co., 794 F.2d 1359, 1364 (9th Cir. 1986) ("competition is not injured where a distributor seeks to obtain a product at the expense of any or all potential distributors"); Arnett Physician

7

Group, P.C. v. Greater Lafayette Health Svcs. Inc., 382 F.Supp.2d 1092, 1095-1096 (N.D. Ind. 2005) (substitution of one exclusive radiology services provider for another doesn't violate antitrust laws); Agency Development, Inc. v. Med. Am. Ins. Co., 310 F.Supp.2d 538, 544-545 (W.D.N.Y. 2004) ("Plaintiff's alleged drop in sales and lost profits . . . are not the result of any anticompetitive conduct of defendants [but r]ather . . .the result of the lawful termination of an agency contract."); Fidelity Nat'l Title Ins. Co. v. Intercounty Nat'l Title Ins. Co., 161 F.Supp.2d 876, 884 (N.D. Ill. 2001) ("plaintiff suffers no antitrust injury when prices are raised by a defendant's behavior"); Futurevision Cable Sys. Of Wiggins, Inc. v. Multivision Cable TV Corp., 789 F.Supp. 760, 770, 771 n.6 and 775 (S.D. Miss. 1992) (network's selection of one distributor over another fails to state a restraint of trade violation), *aff'd without opinion*, 986 F.2d 1418 (5th Cir. 1993).

Granite also contends that Nexstar hasn't alleged that any anticompetitive conduct on Granite's part caused Nexstar's injury — that but for the violation (which Granite understands to be Granite's acquisition of the FOX network affiliation), the injury (which Granite understands to be loss of the Fox affiliation and programming) wouldn't have occurred. *Citing* Greater Rockford Energy & Tech. Corp. v. Shell Oil Co., 998 F.2d 391, 395 (7th Cir. 1993); O.K. Sand & Gravel, Inc. v. Martin Marietta Techs., Inc., 36 F.3d at 573-574; Agency Dev., Inc. v. Med. Am. Ins. Co., 310 F.Supp.2d at 544-545. Granite contends that the alleged injury would be the same no matter who succeeded Nexstar as the FOX affiliate, *see* Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 487 (1977);

8

Alberta Gas Chems. Ltd. v. E.I. DuPont de Nemours & Co., 826 F.2d at 1241-1242, 1246, and that "Nexstar's alleged injury flows from its termination of FOX's exclusive programming distributor agreement and its own unwillingness to pay for that programming, rather than from anything illegal that Granite did."

Nexstar says the injury it alleges isn't the loss of a single exclusive-dealing relationship (the FOX affiliation agreement) or higher prices, as Granite suggests, but rather the loss of the ability to compete at all in the local advertising market, so its case differs from the cases on which Granite relies. Nexstar says it and other television stations in the Fort Wayne area have suffered and/or will suffer an antitrust injury as a result of Granite and Malara's collusive aggregation of the exclusive contracts for five of the six national network affiliations in the Fort Wayne area – not just the FOX affiliation. That collusive aggregation, Nexstar says, cuts off an essential or "key" input for effective competition in the local advertising market ("must have" network programming), creates a barrier to entry and expansion in that market, and gives Granite the market power to effectively foreclose competition and to raise advertising prices above competitive levels. Nexstar reasons that its injury flows from the harm to competition perpetrated by Granite, and satisfies the "but for" causation and antitrust injury requirements for antitrust standing. *Citing e.g.,* Fishman v. Estate of Wirtz, 807 F.2d 520, 533 (7th Cir. 1986); Ohio-Sealy Mattress Mfg. Co. v. Kaplan, 745 F.2d 441, 449-450 (7th Cir. 1984); Medscan v. N.Y. Univ. Sch. of Med., 430 F.Supp.2d 140, 148-149 (S.D.N.Y. 2006) (Chin, J.) .

Granite replies that Nexstar's "aggregation" theory of liability is meritless because Nexstar had access to network programming until August 2011 and suffered no injury until it lost its bid to renew the FOX affiliation contract. Granite concludes that its pre-2011 network affiliations couldn't have been the "but for" cause of the alleged injury, that this is a simple case of one exclusive distributor replacing another, and that the antitrust laws weren't intended to prevent that type of injury or the higher consumer prices that might result.

The conduct complained of and the injury alleged aren't as simple as Granite contends. The complaint alleges that Granite, either alone or with Malara and others, engaged in a course of conduct that had the purpose and effect of excluding competition in the television local spot advertising market in violation of the antitrust laws when it: (1) entered into agreements and/or conspired with Malara and others to consolidate market power, raise the price of advertising, acquire exclusive affiliation agreements with five of the six major national television networks in the Fort Wayne DMA, and deny competitors' access to "must have" network programming, the large consumer audiences that it attracts and that advertisers target, and the advertising revenues that it generates[1]; (2) accelerated the movement of advertisers from Nexstar's WFFT-TV to the stations Granite and Malara own by telling advertisers that WFFT-TV won't be able to

---

[1] It's not clear from the complaint when the alleged anti-competitive conduct actually began, but it could reasonably be inferred that it started in 2005 with the acquisition of WISE-TV (the NBC affiliate), sale of WPTA-TV to Malara, and subsequent agreements between Granite and Malara which effectively transferred operation and control of WPTA-TV back to Granite.

access "must have" network programming and will be going off the air, is about to be sold, or will no longer broadcast local news; and (3) approached and tried to entice (through offers of high compensation) several key Nexstar sales employees with confidential and proprietary information about Nexstar's WFFT-TV advertising prices.

Nexstar says Granite's acquisition of the FOX affiliation in 2011 simply nailed the lid on the coffin, and alleges that no offsetting efficiency rationale or pro-competitive benefit that justifies Granite's acts. Nexstar says Granite's actions have caused Nexstar to incur past and future substantial harm in the form of lost profits (advertising revenues), higher operating costs, and the loss of experienced sales staff and the proprietary information they possess.

Nexstar's aggregation or "chain reaction" theory of liability was pleaded in each of its claims, as was the requisite antitrust injury. Contrary to Granite's assertions, the alleged facts support a reasonable inference that Granite's concerted pre-2011 actions gave it the market power needed to acquire control over all a majority of the network affiliations and network programming in the Fort Wayne DMA and the advertising sales and revenues those affiliations generate, to the exclusion of other competitors. Whether Nexstar can prove that Granite's concerted actions are illegal per se or under the rule of reason (*i.e.*, that Granite was involved in a horizontal conspiracy with the purpose and effect of excluding direct competitors from the market, or that the alleged conduct would always or almost always tend to restrict competition and decrease output, without

11

justification), *see* Broadcast Music, Inc. v. CBS, 441 U.S. 1 (1980), and whether Granite's actions were the "but for" cause of Nexstar's alleged injuries remains to be determined. The court can't decide at the pleadings stage whether Nexstar would have suffered identical injuries had someone else acquired the FOX affiliation, as Granite contends. While Nexstar's injuries might have been the same if another competitor had purchased the FOX affiliation, it could be inferred plausibly from the complaint's allegations that Granite, because of its market power, was the only competitor who could and would pay a "supra-competitive" price for the FOX affiliation agreement.

The complaint contains enough in the way of factual allegations to make Nexstar's antitrust claims "plausible" and to survive a motion to dismiss.

B. *Antitrust Standing*

"Standing . . . examines the connection between the asserted wrongdoing and the claimed injury to limit the class of potential plaintiffs to those who are in the best position to vindicate the antitrust infraction." Greater Rockford Energy and Tech. Corp. v. Shell Oil Co., 998 F.2d 391, 395 (7th Cir. 1993). "[N]ot all persons who have suffered an injury flowing from [an] antitrust violation have [antitrust standing]." In re Industrial Gas Antitrust Litigation, 681 F.2d 514, 516 (7th Cir. 1982). "From the class of injured persons suffering an 'antitrust injury' only those parties who can most efficiently vindicate the purposes of the antitrust laws have antitrust standing to maintain a private action . . . ." Serfecz v. Jewel

12

Food Stores, 67 F.3d 591, 598 (7th Cir. 1995) (quoting In re Indus. Gas Antitrust Litig., 681 F.2d 514, 516 (7th Cir. 1982); *accord*, Kochert v. Greater Lafayette Health Svcs, Inc., 463 F.3d 710, 716 (7th Cir 2006).

A court considers multiple factors in determining whether a plaintiff has antitrust standing, including: (1) "the causal connection between the damages claimed by the antitrust plaintiff and the harm to the plaintiff;" (2) "the nature of the injury suffered by the plaintiff and the relationship between the injury and the type of conduct sought to be redressed by providing a private remedy for antitrust violations;" (3) "the directness of the asserted injury;" and (4) "the risk of duplicate recoveries or (conversely) the difficulties of apportioning damages among various classes of plaintiffs." Nelson v. Monroe Reg'l Med. Ctr., 925 F.2d 1555, 1562-63 (7th Cir. 1991). *See also* Associated General Contractors v. California State Council of Carpenters, 459 U.S. 519, 537-46 (1983); Kochert v. Greater Lafayette Health Servs., 463 F.3d at 718; Sanner v. Bd. of Trade of the City of Chicago, 62 F.3d 918, 927 (7th Cir. 1995). "The existence of an identifiable class of persons whose self-interest would normally motivate them to vindicate the public interest in antitrust enforcement diminishes the justification for allowing a more remote party . . . to perform the office of a private attorney general." Associated General Contractors v. California State Council of Carpenters, 459 U.S. at 542.

Granite contends that Nexstar lacks antitrust standing because it can't prove antitrust injury or but for causation, and so isn't the party that "can most efficiently vindicate the purposes of the antitrust laws." *Citing* Kochert v. Greater

13

Lafayette Health Svcs, Inc., 463 F.3d at 716; Serfecz v. Jewel Food Stores, 67 F.3d at 598. But the issue at this stage isn't whether Nexstar will prevail on the merits; it's whether the complaint sufficiently alleges a "plausible" antitrust claim. Ashcroft v. Iqbal, 556 U.S. at 678; In re Text Messaging Antitrust Litigation, 630 F.3d at 629. While "[t]he required level of factual specificity rises with the complexity of the case," McCauley v. City of Chicago, 671 F.3d 611, 616 (7th Cir. 2011); Swanson v. Citibank, N.A., 614 F.3d 400, 404 (7th Cir. 2010) ("A more complex case…will require more detail, both to give the opposing party notice of what the case is all about and to show how, in the plaintiff's mind at least, the dots should be connected."); Limestone Development Corp., 520 F.3d at 803 ("Rico cases, like antitrust cases, are "big" cases and the defendant should not be put to the expense of big-case discovery on the basis of a threadbare claim."), the court already has decided that Nexstar has sufficiently alleged antitrust injury and stated a plausible claim under federal and state antitrust laws. Nexstar doesn't purport to stand in the shoes of third parties (advertisers or consumers) or complain about "secondary consequences arising from an injury to a third party." Sanner v. Bd. of Trade of the City of Chicago, 62 F.3d at 929. Nexstar's alleged injuries appear to be direct, and the risk of duplicate recoveries appears remote at this stage. *See* Loeb Indus., Inc. v. Sumitomo Corp., 306 F.3d 469, 492 (7th Cir. 2002). Based on the record before the court so far, Nexstar has the requisite antitrust standing.

C. *Denigrating Speech and Predatory Hiring*

Granite asks the court to dismiss Nexstar's claims of denigrating commercial speech and predatory hiring, contending that such allegations don't state an actionable anti-trust claim under our circuit's law. *See* Sanderson v. Culligan Int'l Co., 415 F.3d 620, 624 (7th Cir. 2005) ("Commercial speech is not actionable under the antitrust laws."); Mercatus Group, LLC v. Lake Forest Hospital, 641 F.3d 834, 852, 854 n.12 (7th Cir. 2011) (noting that the Seventh Circuit has "never recognized predatory hiring as a valid theory of antitrust liability"). Granite cites Mercatus Group, LLC v. Lake Forest Hospital, 641 F.3d at 850-51, for the proposition that "speech made in the commercial context does not violate the antitrust laws unless it . . . is accompanied by some sort of 'enforcement mechanism' designed somehow to coerce or compel [the listerner] to heed the admonition," and contends that Nexstar hasn't alleged that Granite engaged in any coercive threats or that "advertisers and the public" aren't free to accept or ignore Granite's alleged denigrating comments.

Nexstar maintains that Granite's predatory hiring and disparagement of Nexstar are part of Granite's "course of conduct" and evidence Granite's specific intent to monopolize the Fort Wayne market for television local spot advertising, Mercatus Group, LLC v. Lake Forest Hospital, 641 F.3d at 852 (acknowledging that "false and misleading statements about a competitor" can be anticompetitive, albeit minimally); DSM Desotech Inc. v. 3D Sys. Corp., 2009 WL 174989 at *10 (N.D. Ill. Jan. 26, 2009) ("'an intent to control prices and destroy competition'" can

15

be inferred from predatory or anticompetitive conduct), and that Granite's ability to wield market power and withhold necessary inputs (like network programming) are coercive enforcement mechanisms. *See* Mercatus Group, LLC v. Lake Forest Hospital, 641 F.3d at 851-852, 855. Nexstar contends that Granite's market power also gives it the ability to offer supra-competitive compensation packages to WFFT-TV's skilled advertising sales staff, giving Granite access to confidential and proprietary pricing information, and enhancing Granite's ability to exercise market power by charging supra-competitive prices for advertising.

Whether Granite's alleged derogatory or disparaging statements are actionable in antitrust depends on the nature of the speech (who it made the statements to and what it said), and whether there was an "enforcement mechanism" in place — whether Granite's statements were backed by any sort of coercive conduct or threat (*i.e.*, the ability to boycott, to enter into agreements not to advertise certain products, or an inherent authority that it could leverage to compel advertisers to deal exclusively with Granite). Mercatus Group, LLC v. Lake Forest Hospital, 641 F.3d at 850-852; Sanderson v. Culligan Int'l Co., 415 F.3d 620, 623-624 (7th Cir. 2005); Schachar v. American Academy of Ophthalmology, Inc., 870 F.2d 397, 399-400 (7th Cir. 1989). "[A]bsent an accompanying coercive enforcement mechanism of some kind, even demonstrably false "[c]ommercial speech is not actionable under the antitrust laws." Mercatus Group, 641 F.3d at 852 (quoting Sanderson v. Culligan Int'l Co., 415 F.3d at 624). "The genuine anticompetitive effects of false and misleading statements about a competitor are

16

minimal, at best . . . As a result, courts must exercise 'caution . . . against attaching much weight to isolated examples of disparagement,' and claims based on one competitor's disparagement of another 'should presumptively be ignored.'" Mercatus Group, 641 F.3d at 852 (quoting American Prof'l Testing Service, Inc., v. Harcourt Brace Jovanovich Legal & Prof'l Publications, Inc., 108 F.3d 1147, 1152 (9th Cir. 1997) [quoting 3 P. AREEDA & D. TURNER, ANTITRUST LAW, ¶ 737b at 280-281 (1978)]. *See also* American Council of Certified Podiatric Physicians & Surgeons v. American Bd. of Podiatric Surgery, Inc., 323 F.3d 366, 370 (6th Cir. 2003); National Ass'n of Pharmaceutical Mfrs. v. Ayerst Labs, 850 F.2d 904, 916 (2d Cir. 1988).

The allegations of denigrating speech and predatory hiring standing alone might not suffice to state an antitrust claim, but Nexstar doesn't contend they would. Nexstar alleges that they are part of a course of conduct (or "chain reaction") and show Granite's intent to monopolize the television advertising market and destroy competition, *see* DSM Desotech Inc. v. 3D Sys. Corp., 2009 WL 174989 at *10 (N.D. Ill. Jan. 26, 2009), and that Granite had a coercive enforcement mechanism (market power and the ability to limit input), and could use it to back its derogatory statements and force advertisers to deal exclusively with it. *See* Mercatus Group, 641 F.3d at 851, 855. Those allegations suffice.

D. *Conspiracy to Violate Antitrust Laws (Counts I and III)*

Granite contends that Nexstar's conspiracy claims (Counts I and III) should be dismissed because a conspiracy "requires proof of at least two independent economic actors,"*see* Great Escape, Inc. v. Union City Body Co., 791 F.2d 532, 536-540 (7th Cir. 1986), and the "judicial admissions" in the complaint conclusively establish that Malara (the only named conspirator) has a "unity of economic interest" with Granite, isn't an "independent center of decisionmaking," and therefore isn't capable of conspiring with Granite to violate the antitrust laws. American Needle, Inc. v. NFL, _ U.S. _, 130 S.Ct. 2201, 2209-2212 (2010) ("the question in not whether the defendant is a legally single entity or has a single name . . . [but] whether there is a 'contract, combination . . . or conspiracy' amongst 'separate economic actors pursuing separate economic interests,' such that the agreement 'deprives the marketplace of independent centers of decisionmaking'"); Cooperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 769, 771 (1984) ("the coordinated activity of a parent [corporation] and its wholly owned subsidiary must be viewed as that of a single enterprise" for purposes of a conspiracy to restrain trade in violation of Section 1 of the Sherman Act).

Nexstar maintains that an entity's nature and ability to combine or conspire is a fact question, L.A. Mem'l Coliseum Comm'n v. NFL, 726 F.2d 1381, 1387 (9th Cir. 1984), and that the facts alleged in its complaint show that Granite and Malara are independent economic entities capable of conspiring: "Like the competitor NFL teams in American Needle, Granite and Malara have acted in concert to join "independent centers of decisionmaking" and have placed a

revenue stream–spot advertising from Fort Wayne advertising sales–under common control. Absent their agreement, Granite and Malara would compete for advertisers and would not be able to join their resources to foreclose competitors from network programming."

The complaint contains various descriptions of Malara and its relationship with Granite. It alleges that Malara owns WPTA-TV, and that Granite entered into agreements with Malara to operate the station and serve as its advertising representative. The complaint also alleges that Malara is "Granite's partner" and a "co-conspirator", that "Granite . . . defined Malara as a Granite subsidiary" in submissions to the bankruptcy court in the Southern District of New York in 2007, and that Indiana's NewsCenter (the brand name for Granite's consolidated operations in Fort Wayne) "currently identifies Granite as 'the present owner' of WPTA." But those allegations don't foreclose the possibility that Malara is an independent entity capable of conspiring with Granite. The complaint contains enough in the way of factual allegations to make Nexstar's conspiracy claims "plausible". Nothing more is required at this stage of the proceedings.

III.

For the foregoing reasons, the court DENIES the defendants' motion to dismiss [Doc. No. 32].

SO ORDERED.

ENTERED:     July 9, 2012

19

/s/ Robert L. Miller, Jr.
Judge
United States District Court